Smith **BARNEY**, Appellant–Defendant,

v.

**STONEMOR OPERATING LLC,**
et al., Appellees–Plaintiffs.

No. 41A04–1103–MF–96.

Court of Appeals of Indiana.

Dec. 19, 2011.

F. Anthony Paganelli, Geoffrey G. Slaughter, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorneys for Appellant.

James L. Petersen, Fred R. Biesecker, Donald M. Snemis, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellees StoneMor Entities and Independence Trust Company.

## OPINION ON REHEARING

CRONE, Judge.

Appellant Smith Barney has petitioned for rehearing of our opinion in *Smith Barney v. StoneMor Operating LLC*, 953 N.E.2d 554 (Ind.Ct.App.2011), in which we affirmed the trial court's denial of Smith Barney's motion to compel arbitration against appellees Independence Trust Company ("Independence Trust") and StoneMor Operating LLC ("StoneMor"). We grant Smith Barney's petition for the limited purpose of clarifying our analysis and affirm our original opinion.

A detailed recitation of the relevant facts appears in our original opinion. We summarized those facts as follows:

> The trial court placed a mortuary business in receivership after its former owners alleged that the current owner had stolen millions of dollars from cemetery trusts that had been established pursuant to Indiana law to ensure the perpetual upkeep of prepaid burial plots and the delivery of prepaid funeral merchandise and services. The trial court ordered the receiver to take control of the business's operations and to marshal and account for the trust fund assets. The receiver filed suit against appellant Smith Barney, which held some of the cemetery trust accounts, alleging that it had participated in the plundering of the trust funds.
>
> [StoneMor] agreed to purchase the mortuary business and was assigned the receiver's claims against Smith Barney. [Independence Trust] was appointed trustee of both the existing cemetery trusts that had been administered by the receiver and new cemetery trusts that had been established by StoneMor. The trial court allowed both StoneMor and Independence Trust (collectively, "Appellees") to assert the receiver's claims against Smith Barney, which they did by filing a complaint.
>
> One week later, Smith Barney filed a motion to compel arbitration, claiming that Independence Trust and, derivatively, StoneMor, were bound by an arbitration clause in Smith Barney account agreements signed by the two trustees that had administered the cemetery

trusts prior to the receivership. The agreements stated that they would be binding on the trustees' "heirs, executors, administrators, assigns or successors in interest."

In response, Appellees pointed out that they were not parties to the agreements. Also, they argued that Independence Trust was not a "successor in interest" to either of the trustees and therefore was not bound by the agreements' arbitration clause; thus, there would be no basis for compelling Stone-Mor to arbitrate its claims. Appellees further argued that, in any event, Smith Barney had waived its right to compel arbitration by, among other things, failing to assert that right in response to the receiver's lawsuit.

The trial court denied Smith Barney's motion to compel arbitration, finding that Smith Barney had impliedly waived any right it might have had to compel arbitration of Appellees' claims.

*Id.* at 554.

Smith Barney appealed the trial court's ruling. Our analysis (including footnotes) read in pertinent part as follows:

> Smith Barney contends that the trial court erred in denying its motion to compel arbitration. We review such a ruling de novo. *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind.Ct.App.2005), *trans. denied.*[1] We have stated that
>
>> Indiana and federal law recognize a strong policy of favoring enforcement of arbitration agreements. A party seeking to compel arbitration must satisfy a two-pronged burden of proof. First, the party must demonstrate the existence of an enforceable agreement

to arbitrate the dispute. Second, the party must prove that the disputed matter is the type of claim that the parties agreed to arbitrate. Once the court is satisfied that the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration.

*Id.* (citations and quotation marks omitted).

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration unless he has agreed to do so." *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238, 1241 (Ind.Ct. App.2010). "Construction of the terms of a written arbitration contract is a pure question of law." *Id.* "In interpreting a contract, we give the language of the contract its plain and ordinary meaning." *Id.* Any ambiguity in a contract is construed against its drafter—in this case, Smith Barney. *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind.2004).

Here, Appellees were not parties to the Client Agreements and therefore did not personally agree to submit to arbitration. Smith Barney asserts that Independence Trust is nevertheless bound by the arbitration clause contained in the Client Agreements signed by Community Trust and Security Financial "as a consequence of [Independence Trust] assuming the position as the *successor trustee* to those predecessor trustees." Appellant's Reply Br. at 18. Appellees correctly point out, however, that the Client Agreements do not contain the phrase "successor trustee"; indeed, the Client Agreements are not even specifi-

---

1. Although the Client Agreements state that they are governed by New York law, both Smith Barney and Appellees cite primarily Indiana law in addressing the issues raised on appeal. Absent any indication that New York law differs substantively from Indiana law on any relevant point, we do likewise.

cally tailored to trust accounts. Rather, the Client Agreements specifically purport to bind the client's "successors in interest," which is something entirely different from a mere "successor trustee." *Cf. Ryan, Beck & Co. v. Fakih*, 268 F.Supp.2d 210, 229–30 (E.D.N.Y. 2003) (addressing investor's argument that broker-dealer was brokerage firm's "successor-in-interest and thus [was] bound by [a] contractual arbitration provision" in investor's client agreement with brokerage firm: "[T]he Second Circuit has recognized a series of doctrines, based on 'common law principles of contract and agency law,' for binding non-signatories to arbitration agreements. In addition to assumption[2] and estoppel, these principles include the same theories under which a corporation that acquires the assets of another entity can be held to have assumed the predecessor's liabilities: a *'de facto'* merger of the two entities; a 'mere continuance' of the predecessor by the successor, or a fraudulent transfer.... To determine whether such a *'de facto* merger' or 'mere continuation' of the predecessor's business has occurred, courts consider (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel,

physical location, assets, and general business operation. Each of these factors is relevant, but the presence or absence of any single factor is not determinative.") (citations and quotation marks omitted).[3]

With the possible exception of factor (3), it is undisputed that none of the foregoing factors applies in this case. To the extent Smith Barney suggests that factor (3) applies in a ·contractual context,[4] Appellees point out that

> Independence Trust did not succeed to an existing trust and escrow agreement under which Community Trust [or Security Financial] had previously served as trustee; rather, StoneMor and Independence Trust created new trusts and escrows pursuant to their own trust and escrow agreements. These trusts and escrows are new legal entities with new tax identification numbers, and Independence Trust opened new accounts to hold the funds.

Appellees' Br. at 22 (citing affidavit of Independence Trust President Marcia Williams). As such, we conclude as a matter of law that Independence Trust is not a "successor in interest" to either Community Trust or Security Financial and therefore is not bound by the arbitration clause in the Client Agreements signed by those entities.[5] Consequently,

---

**2.** This "assumption" is different from the "assumption of liabilities" mentioned below. *See Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2nd Cir.1995) ("In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate."). Clearly, Independence Trust has not engaged in such conduct here.

**3.** We note that the client agreement in *Ryan, Beck & Co.* stated that it would be binding on the signatories' "successors," which both the investor and the district court apparently construed as "successors-in-interest." 268

F.Supp.2d at 229. Because the Client Agreement in this case actually says "successors in interest," we find the analysis in *Ryan, Beck & Co.* persuasive.

**4.** We note that Smith Barney does not suggest that "liabilities" include any statutory or fiduciary obligations that the trustees owed (and/or breached) to the cemeteries or their customers.

**5.** Smith Barney cites *Harlow v. Parkevich*, 868 N.E.2d 822 (Ind.Ct.App.2007), for the proposition that "a successor trustee is bound by an

there is no basis for compelling Stone-Mor to arbitrate its claims. Therefore, we affirm the trial court's judgment.[6] *Id.* at 557–59.

In its petition for rehearing, Smith Barney asserts that Appellees' reference to Marcia Williams's affidavit

> may have led [us] to reach an erroneous conclusion for three reasons: (1) notwithstanding the references to "new" trusts in Appellees' assertions, it is undisputed that Independence Trust is *also* the trustee of the Ansure trusts which are the focal point of this litigation; (2) Independence Trust is asserting its claims against Smith Barney as a successor trustee to the Ansure trusts; and (3) as a successor trustee, Independence Trust is a "successor in interest" to the prior trustees who signed the arbitration agreements, and is therefore bound by those agreements under fundamental principles of trust law.

Petition for Reh'g at 2.

We address Smith Barney's assertions in turn. First, it is indeed undisputed that Independence Trust is also the trustee of the Ansure trusts, and we stated as much in the "Case Summary" and "Facts and Procedural History" sections of our original opinion. *See Smith Barney,* 953 N.E.2d at 554 ("[Independence Trust] was appointed trustee of both the existing cemetery trusts that had been administered by the receiver and new cemetery trusts that had been established by StoneMor."), 557 ("In April 2010, the trial court ... ap-proved the appointment of Independence Trust as trustee of both the Ansure and the StoneMor cemetery trusts."). To the extent that our analysis suggested otherwise, such a suggestion was incorrect.

Second, it is also undisputed that Independence Trust is asserting its claims against Smith Barney as a successor trustee to the Ansure trusts. That said, Independence Trust is also asserting its claims as an assignee of the Receiver's claims against Smith Barney.

 As for its third assertion regarding "fundamental principles of trust law," Smith Barney ignores the fact that under Indiana law (and also under New York law, which governs the Client Agreements), "[a]rbitration is a matter of *contract* and a party cannot be required to submit to arbitration *unless he has agreed to do so.*" *Green Tree Servicing,* 930 N.E.2d at 1241 (emphases added); *see also Kidder, Peabody & Co. v. Fisch,* 241 A.D.2d 522, 523, 661 N.Y.S.2d 31 (N.Y.App.Div.1997) ("It is well settled that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citation and quotation marks omitted). Independence Trust did not sign the Client Agreements and thus did not agree to arbitrate its claims against Smith Barney.

 Smith Barney contends,

> It is fundamental that a trustee of a trust holds legal title to the property of the trust and that a successor trustee

---

arbitration agreement entered into by its predecessor trustee relating to the trust." Appellant's Reply Br. at 18. We find *Harlow* inapposite because whether the successor trustee was a "successor in interest" for purposes of the arbitration agreement was not explicitly decided in that case. We are similarly unpersuaded by Smith Barney's reliance on *Kahn v. New York Times Co.,* 122 A.D.2d 655, 503 N.Y.S.2d 561 (N.Y.App.Div.1986), which does not even mention the relevant arbitration clause.

6. We acknowledge that the trial court did not address this issue, but Smith Barney does not dispute Appellees' contention that we may affirm the trial court's ruling on any theory or basis supported by the record.

"succeeds to the title of the trust property without the necessity of a conveyance from his predecessor." *Oak Hill Cemetery of Hammond, Inc. v. First National Bank of Kokomo,* 553 N.E.2d 1249, 1251 (Ind.Ct.App.1990) (citing George G. Bogert & George T. Bogert, The Law of Trusts and Trustees, § 532). Thus, as a matter of law, the interest in the trust property succeeds from one trustee to the next. The successor trustee therefore, is clearly the "successor in interest" to that trust property. *See* Black's Law Dictionary, 9th Ed., definition of "successor in interest" ("One who follows another in ownership or control of property. A successor in interest retains the same rights as the original owner, with no change in substance.").

Petition for Reh'g at 6–7.[7] We are not concerned here with successors in interest to the trust property, but rather with successors in interest to the Client Agreements. *See* Appellant's App. at 897 ("This agreement contains a predispute arbitration clause. By signing an arbitration agreement *the parties agree as follows: .... The provisions of this Agreement ... shall be binding upon my* heirs, executors, administrators, assigns or *successors in interest.*") (emphases added); *see also West v. Case,* 142 P.3d 576, 580 (Utah Ct.App.2006) (distinguishing between successors to interest in contract and successors to interest in trust property that was subject matter of contract).

With respect to contracts, Smith Barney says,

[T]rust law clearly recognizes that a successor trustee is bound by contractual obligations entered into by its predecessor trustees relating to the trust. *See* George G. Bogert & George T. Bogert, The Law of Trusts and Trustees, § 722 ("[A] creditor should be able to sue a successor trustee as trustee on contracts that the predecessor trustee made."). Any other rule would permit a trust to avoid contractual obligations entered into on its behalf by its trustee by simply changing trustees.

Petition for Reh'g at 6 (citation to brief omitted). Smith Barney does not cite a single case (from New York or elsewhere) to support the application of this proposition to the arbitration context, which, as noted earlier, is governed by principles of *contract* law. In any event, the Client Agreements do not indicate that they were signed by the predecessor trustees in their representative capacity or that the accounts were opened on behalf of a trust (which, incidentally, was purely a creature of statute in this case).

---

**7.** The Indiana Supreme Court has said, "An arbitration clause, like any other contract, binds the parties to the agreement and those in privity. Privity is found if a non-party holds 'a mutual or successive relationship with [a party] with regard to property or that their interests are so identical as to represent the same legal right.'" *Isp.com LLC v. Theising,* 805 N.E.2d 767, 774 (Ind.2004) (quoting *Mislenkov v. Accurate Metal Detinning, Inc.,* 743 N.E.2d 286, 289 (Ind.Ct.App.2001)). Smith Barney's motion to compel arbitration was based not on privity but solely on the wording of the Client Agreements themselves. *See* Appellant's App. at 841 ("[U]nder the plain terms of the Client Agreements, their arbitration provisions apply with full force to the claims that Independence Trust is now asserting in the Complaint as successor trustee."). To the extent Smith Barney's argument in its petition for rehearing is based on anything other than the wording of the Client Agreements, it is waived. *See New York Life Ins. Co. v. Henriksen,* 421 N.E.2d 1117, 1118 (Ind.Ct.App.1981) ("Any question which has not been briefed or argued in the briefs on appeal cannot be raised for the first time in a petition for rehearing."), *opinion on reh'g; see also Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 346 (2nd Cir.1995) ("Privity may exist for the purpose of determining one legal question but not another depending on the circumstances and legal doctrines at issue.").

Regardless of whether a "successor trustee" may be considered a "successor in interest" for purposes of the Client Agreements, the fact remains that Independence Trust did not sign the Client Agreements. In our original opinion, we mentioned "a series of doctrines, based on 'common law principles of contract and agency law,' for binding non-signatories to arbitration agreements." *Smith Barney*, 953 N.E.2d at 558 (quoting *Ryan, Beck & Co.*, 268 F.Supp.2d at 229); *see also MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2nd Cir.2001) (summarizing those doctrines as "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel"). In its petition for rehearing, Smith Barney does not argue, let alone establish, that any of those doctrines apply.

Based on the foregoing, we grant Smith Barney's petition for rehearing for the limited purpose of clarifying our analysis and affirm our original opinion.

ROBB, C.J., and NAJAM, J., concur.